GIBLIN, VINCENT C., Associate Judge.
The chancellor below, by the final decree from which these appeals have been prosecuted,[1] required the specific enforcement of an oral contract entered into in the early part of 1950 by which A. W. Lindgren (who owned the five-acre tract of land involved in this litigation) and Anna Belle Lindgren, his wife (who had an inchoate dower interest) agreed to convey the tract •to Waller Van Fleet and Mildred Irene Van Fleet, his wife, for $1,200.
At the time the oral contract was entered into Van Fleet paid to Lindgren a “binder” of $222.75. The payment was evidenced by an undated receipt, signed by Lindgren, but not by his wife. In the receipt the “binder” was designated as a “part payment on 5 acres of land located south of Waldin Drive and west of Country Club Road, E y2 of SW V4 of NW J4 of NW y4 3-57-38.” The amount of the full purchase price was not specified in the receipt, nor were any of the terms or conditions of the oral contract incorporated in the receipt. There was no written evidence of the oral contract other than the receipt.
Van Fleet suggested, and Lindgren agreed, 'when the partial payment was made, that the transfer of the title should be consummated within 30 days at the office of the National Title Company in Miami; and Lindgren assured Van Fleet that an abstract of title would be delivered to the title company “in a few days.”
During the ensuing three months Van Fleet, in several telephone conversations with Lindgren, complained of the latter’s failure to deliver the abstract to the title company and voiced his readiness to pay the balance of the purchase price and to effectuate the oral contract. The only response elicited was Lindgren’s promise that he would “get around to it some day” and deliver the abstract to the title company.
The abstract was never delivered; and there was no further communication, oral or written, between Van Fleet or his wife and Lindgren or his wife, until November, 1955, more than five years after the last of the telephone conversations. ■
In 1954 Van Fleet and his wife were divorced. Before the divorce suit was instituted, or while it was pending, they ef *883 fected an amicable settlement of their property rights and financial matters. On August 30, 1954, as an incident to such settlement, they both executed a quit-claim deed by which they “remised, released and quit-claimed. * * * all the right, title, interest, claim and demand which [they had] in and to the five-acre tract” to her. The deed was recorded on September 2, 1954, in the public records of Dade County.
In November, 1955, Van Fleet and his former wife went to Lindgren’s home and advised him of their desire to pay the balance of the purchase price and to “close the deal.” Lindgren’s reply was that “the property has gone up in value down there a whole lot since we talked before about this.” He asked that he be given time to consider the matter. Six or seven weeks elapsed, during which Van Fleet and his former wife telephoned Lindgren several times, urging him to “close the deal.” Finally, in the last of such conversations, Lindgren advised them that he would not sell the property at the price which they had offered to pay, but that he was willing to refund the partial payment of $222.75, “with interest.”
On February 7, 1956, Van Fleet’s former wife, because of her unwillingness “to go to court,” executed a quit-claim deed by which she “remised, released and quit-claimed. * * * all the right, title, interest, claim and demand which [she had] in and to [the five-acre tract]” to him. For the deed he gave her his note by which he promised to pay her $222.75, with five per cent, interest, “when and if this property [is] settled, regardless of the outcome.” In other words, as he testified at the trial before the chancellor, he is “going to give her the same amount that Mr. Lindgren offered.” The quit-claim deed from Van Fleet’s former wife to him was not recorded in the public records.
On March 15, 1956, eight months prior to the institution by Van Fleet of the suit in which the challenged decree was entered, .Lindgren and his wife, by their warranty deed, conveyed the five-acre tract to Henry Spechler and Ruth B. Specifier, his wife, who paid $5,500 for the property.
In his final decree the chancellor held that the Spechlers “had notice of the plaintiff’s contract, making their purchase of the property subject to plaintiff’s rights under this decree.” The only evidentiary basis for the chancellor’s holding was that the Spechlers’ attorney, in examining an abstract of the title to the property, saw an entry reflecting the recordation of the mentioned “wild” quit-claim deed from Waller Van Fleet and Mildred Irene Van Fleet, his wife, to her, which was recorded on September 2, 1954.
Counsel for the plaintiff-appellee, Van Fleet, admits that the undisputed evidence shows that the Spechlers had no actual knowledge of the oral contract entered into six years before their purchase of the property. Counsel also concedes that the evidence disclosed, without dispute, that Van Fleet was not in possession of the property at the time it was purchased by the Spechlers. Counsel, however, successfully contended before the chancellor that the knowledge of the “wild” quit-claim deed, acquired by the Spechlers’ attorney in his examination of the abstract, was sufficient to require them to pursue an inquiry, and that had they made an inquiry they could and would have learned of Van Fleet’s claimed right to the specific enforcement of the oral contract.
We need not concern ourselves with the question of whether the recordation of a “wild” deed executed by a stranger to the record title, and knowledge of such recordation, is such notice to one who contemplates the purchase of the land from the record title holder as to impose on such prospective purchaser the duty to pursue an inquiry for the purpose of determining what rights or interests, if any, were acquired by the grantee.
Our conclusion that the decree appealed from should be reversed is predicated or. fundamental equitable principles which we *884 think govern in the circumstances revealed by the record.
As we have pointed out, Van Fleet, on August 30, 1954, more than four years after the oral contract had been entered into, relinquished to his former wife, by his’ execution of the first of the mentioned quit-claim deeds, the “right, title, interest, claim and demand” which he had had “in or to” the five-acre tract. Much later, on February 7, 1956, because of his former wife’s disinclination to resort to litigation, Van Fleet acquired her “right, title, interest, claim and demand” by promising to pay her $222.75, with interest, for a quitclaim deed executed by her. Expressed more indelicately, he “bought a law suit,” because some time before her execution of the deed Lindgren had informed the Van Fleets that he would not comply with the oral contract entered into in 1950. Van Fleet had awaited a substantial appreciation in the value of the five-acre tract before asserting his claimed right to the specific enforcement of the oral agreement. Its value was more than four times greater than it had been at the time the oral agreement was made. In March, 1956, a month after Van Fleet re-acquired an “interest” in the land, the Spechlers paid $5,500 for the property.
On November 20, 1956, more than six years after the oral contract had been entered into, Van Fleet instituted the suit in which he asserted his claimed right to the specific enforcement of the oral agreement. During the intervening years neither Van Fleet nor his former wife paid any of the taxes assessed against the property. Until the tract was conveyed to the Spechlers, Lindgren paid the taxes.
It is' our view that to accord to Van Fleet, despite the gross delay, the advantage incident to the specific enforcement of the oral contract after the property has substantially increased in value, would be to encourage undue delays and sanction speculation. See 49 Am.Jur. 93.
We have held, as has the Supreme Court, that the oral contract was not enforceable against Mrs. Lindgren, who, before the conveyance to the Spechlers, held an inchoate dower interest in the land. See 101 So.2d 155 and 107 So.2d 381. By the conveyance to the Spechlers she relinquished to them the dower interest which she had not been obligated to relinquish to the Van Fleets.
At no time after the oral contract had been entered into, and before the conveyance to the Spechlers, had the Van Fleets, or either of them, offered to pay Lindgren the full purchase price and to take the title subject to his wife’s inchoate dower interest.
To reward Van Fleet and to penalize the Spechlers in the circumstances disclosed by the record would be, in our opinion, an intolerable result.
The only relief to which the plaintiff-appellee is entitled is the refund to him by the defendant-appellant A. W. Lindgren of the sum of $222.75 (the amount of the partial payment made in 1950), together with interest at the legal rate.
The decree appealed from is reversed; and the court below is directed to enter an appropriate final decree consistent with the views which we have expressed.
HORTON, Acting Chief Judge, and PEARSON, J., concur.

. Those causes have previously been before this court and are reported at 101 So.2d 155 and 101 So.2d 157. Subsequent to said appearance the Supreme Court of Florida granted certiorari and •upon hearing quashed a portion of the opinion. See Fla., 107 So.2d 881 and 107 So.2d 883. Upon re-argumont the following is written pursuant to the consideration directed by the Supreme Court.